This honorable appellate court for the second district is now open. The Honorable Justice Catherine Zenoff presiding, along with Justice Anne Jorgensen and Justice Mary Shostak. The case is number 2-19-0451, in re Marriage of Miller, Lorena K. Miller, Petitioner-Appellant versus Jeffrey A. Miller, Respondent-Appellee. Arguing for the Petitioner, Phyllis J. Perko. Arguing for the Respondent, Michael C. Doyon. Thank you, Mr. Kaplan. Good morning, counsel. This is Justice Zenoff speaking. We would like to thank you very much for being available to proceed with oral arguments remotely this morning. It's an adventure, a new adventure for all of us, and we really appreciate your availability. Before we begin, just a word or two about our format this morning. Just as if you were in the courthouse in Elgin, you will each have up to 15 minutes for your argument. The appellant, of course, will also have up to 5 minutes for rebuttal. You've heard the buzzer that Mr. Kaplan has. He will mark the time with the buzzer. You do not have to use all of your time allotted. I'd also like to remind you that, as is the practice of the Second Appellate District, we have all read your briefs ahead of time. What will be a little bit different this morning is that we will not interrupt your argument with our questions as we usually do. We felt that since this is being done remotely, it really would be too difficult to proceed in that manner and really know who was asking the question, and we just thought it would be easier if we save our questions for each of you until you have completed your arguments. That is, after the appellant argues, we will ask the appellant questions. After the appellee argues, we will ask the appellee's counsel questions. I would like to remind you that no one except the clerk is permitted to record the proceeding today. So, do either of you have any questions before we formally begin? No, you don't. I don't have any questions. Okay. Thank you. All right. At this time, then, Ms. Pirco, would you like to begin? Yes. Thank you, Your Honor. Good morning to everyone, and may it please the Court. In this appeal, the former wife claims error in the trial court order entered on post-judgment divorce proceedings, which order drastically reduced the amount of maintenance that Lorena Mikron had been making or had been awarded, and also changed the nature of the award from a permanent or an indefinite award to a reviewable award. Just briefly, the parties are currently in their early 60s. They were married for 24 years, divorced in 2007, and the permanent maintenance award had been one that essentially gave my client 21.44 percent of the husband's gross income. The ex-husband's petition in these review proceedings were prompted and are based on a loss of his employment, which he claims entitled him to a termination of maintenance or other unspecified release. The position of my client, the ex-wife, on this appeal, accepts that the termination of her former husband's employment was involuntary, or in other words, in good faith. But nevertheless, she claims that because of his age at the time of termination, which was roughly 63, that he segued without interruption into retirement. He in fact had been intending to retire two years later at age 65, later meaning two years after his termination of employment. So he transitioned into retirement more or less seamlessly upon the termination of his employment. So the question centers now on whether or not he has an ability to pay and whether or not Laverne has a continuing need for maintenance. The test for a modification of support is well-established both by statute and by case law. And in order for a modification legitimately to be granted, there must be a substantial change in circumstances. The circumstances in question mean the needs of the recipient or the ability of the other spouse to pay. Of course, the party who seeks a modification of support or maintenance bears the burden of proof. It's our core position on this appeal that the trial court erred in granting modification in this case because the trial court deemed that the change in circumstances was really the mere fact of Mr. Miller's loss of employment. This view of the trial court allowed it to modify maintenance without giving due consideration to any changes in circumstances regarding Mr. Miller's ability to pay or Laverne's need for maintenance. The case law, and particularly exemplified by recent decisions of this court in Verheen v. Hickey in In Re Marriage of Bernay. So, these are representative of a line of authority. But this line of authority makes clear that the loss of employment for a retiree is likely to have much different consequences than the loss of employment by a younger person. Because the loss of employment by a retiree is something that is anticipated in terms of there being a change of employment from the active earning of income to a living off of accumulated assets. So, good faith retirement does not resolve whether the question of whether or not loss of employment is actually an economic reversal because the obligor is already anticipating the situation of living off accumulated assets. So, the case law establishes that the question of whether the obligor can rely on retirement is the change in circumstances is one that has to be made on a case-by-case basis. In Verheen, this court described the analysis of the change in circumstances regarding a holistic view of the obligor's financial position, a quote, considering all of the financial resources including assets and even the financial status of a new spouse. Well, in the case that's at bar, an analysis or actually just a reading of the record would show that there was not evidence from which the trial court could even have made a realistic or holistic assessment of Mr. Miller's financial circumstances. So, that did not happen in this case. Clearly, there's no evidence of income or at least not substantial evidence. The only evidence really of Mr. Miller's financial circumstances were found in his financial affidavit to which he testified at trial, but his testimony really does not elucidate the information that's found in that affidavit. So, there really is no evidence in this case of income in the sense of a return on investment assets. There's no evidence of the expenses of Mr. Miller separated from the expenses of his ex-spouse. There's no consideration of what contribution the ex-spouse might make and indeed, the indications are that she was making-that she is making no-excuse me, the current spouse. There's no indication that she is making any contribution to joint expenses. The testimony is that she is not. So, this is one of the factors that Bergen is indicating should be considered the financial position of the current spouse. Well, this current spouse, there's sparse testimony, but we know that she has upwards of half a million dollars in assets herself and nevertheless doesn't contribute to joint expenses. There's no evidence of how long Mr. Miller's assets might last to fund his current lifestyle. There's no consideration of the draws that his financial affidavit indicates that he is making on a monthly basis, which would constitute evidence of his ability to pay. So, in summary, the trial court abused its discretion essentially assuming that the loss of employment and the ensuing retirement constituted a substantial change in circumstances, but the trial court really did not consider at all Mr. Miller's ability to pay-to continue to pay maintenance, but that is precisely what is required under the case law. So, we maintain that this was a significant abuse of discretion under the standards of exercise of discretion and that the only remedy for Mr. Miller's failure to sustain his burden of proof on the ability to pay is a reversal of the existing order of the trial court. There are two additional errors that we raise in our brief, and these two additional errors are not at all addressed in the answer brief of Mr. Miller, but these errors are crucial because they bear on the question of whether or not Lorena has a continuing need for maintenance. These two additional errors have to do with the trial court's treatment of Lorena's non-employment and the trial court's treatment of the expert testimony in this case. Regarding the first mentions of these, which is Lorena's non-employment, the trial court made relatively lengthy oral findings, and we would characterize its findings regarding Lorena's non-employment as being negative findings that essentially penalized her for her non-employment. There are several references by the trial court in its findings to the non-employment matter. Perhaps the most indicative of these is that the trial court stated that Lorena put her retirement in jeopardy by not working. This appears to be a recognition that the trial court itself would put Lorena's retirement in jeopardy by its ruling, but the trial court made two really erroneous findings. First of all, it found that Lorena could have earned as much as $30,000 a year. There's absolutely no basis in the record for this type of speculation. Perhaps the most telling piece of evidence that indicates the error of this finding is the Social Security report of the annual income earnings of Lorena over the years, and this income report shows that there were many years during the marriage, if not most of the years, that she earned zero income, and insofar as she earned income in any given year, it was generally what might be termed modest, certainly, because it was never more than $18,000, but normally, in those years that she did earn income, it was usually minimal, like maybe $1,000 or a couple of thousand dollars a year. So, needless to say, this situation well supported the original grant of indefinite or permanent maintenance in this case, but what is burning is that really there never has been a specific expectation that she would have participated in the workforce and been an employed person. The Bernay decision is particularly instructive on this point. Some of the comments or the reasoning analysis of the court in Bernay are instructive for this case, and it says that the prior reviews of maintenance are very significant because they indicate what is expected, and they direct the attention to the test, and the test for a modification of maintenance. Is that the actual conclusion, then? Is that the conclusion of my time? Yes. Okay. So, I'll then rely on my brief for the remaining point on the improper use of expert testimony. Does the court have questions? Hello? Justice Enos? Justice Jorgensen? Hello? Hello? I'm here. Okay. Can you hear me now? Yes. Okay. Justice Jorgensen, can you ask questions now? Do you have any? Yes, I do. It appears to me that the court did recognize Verhines. What do you find that he did erroneously in his application of Verhines? Well, the court recognized Verhines, or at least he stated that he was aware of the decision, but he was not presented with evidence. So, I mean, there's kind of a two-part problem here, and, I mean, it starts first with the is-based on Verhines-is to present a realistic view of what income or assets realistically are First problem occurs when Mr. Miller simply doesn't present that kind of realistic view of what his assets mean. Essentially, all he does is give us a list of his various holdings, but we don't know what likely income or what rate of return might happen from that income. We don't know how long his income might last. So, I mean, that's the first problem. And the trial court did not apparently realize that problem of the burden of proof. I mean, despite its having read Verhines, it doesn't acknowledge that there existed a burden of proof. What the trial court appears to have done is said, well, there's a change in circumstances because Mr. Miller lost his employment. And then, of course, he relied on the expert testimony regarding, let's say, the value of Lorena's holdings. And though that approach is inconsistent, we would submit with the Verhines approach. Okay. But do you think that based on Verhines, the trial court erred in finding an absence of sufficient evidence for a change in circumstance, or that based on the totality of the evidence, there was insufficient evidence to modify maintenance for both? Both of those. Okay. Thank you. Thank you. All right. That was really my question. I have no further inquiry. Okay. Justice Shasta? Yes. Ms. Perko, if the court considered properly the factors as are supposed to be set out in Verhines, would it have been proper or improper at that time for the court to take into consideration your client's lack of work? Well, not, I think, if you read Verhines in conjunction with Bernays, because we think what is instructed from Bernays is what the expectation was for Mrs. Miller. So, I mean, there is nowhere in the judgment of the trial court, and again, in that judgment, although we don't get the benefit of transcripts from those proceedings, there are extensive findings by the trial court in granting what the original trial court, in his findings regarding maintenance. And although he stresses the disparity in income between the two parties and the fact that it would not be reasonably anticipated that Lorena would ever match her husband's income, he certainly does not put a review period, nor does he even state an expectation of what she might be earning in the future. And that's from the original judgment. But what's even more significant, then, is the review of judgment that occurred pursuant to Mr. Miller's 2013 petition for review. And in that petition for review, one of the grounds that he cited as sufficient for a termination of maintenance specifically was Lorena's non-employment. After the remand from the appellate court on the issue of cohabitation, the trial court eventually ruled on that, let's say, second count or other count of the husband's petition, and that was based on a request for termination based on non-employment. And that request was denied on remand, and no appeal ever was taken. Bernays says that the prior adjudications regarding support are the best indication of what is expected, and furthermore, that the change in circumstances necessary for a modification of maintenance is based on the last adjudication. So the trial court did not follow those admonitions and that analysis and those requirements that were in Bernays with reference to what constitutes the change in circumstances. MARY JO GIOVACCHINI Thank you. I have no further questions, Justice Enos. Okay. I actually have a question regarding the expert testimony. With respect to indicated that if any assumptions, and apparently he made a lot of assumptions in coming up with his determination that she would have sufficient income for the rest of her life, if any of these assumptions changed, or if Lorena's circumstances changed, the results changed, is that your understanding? Was that correct? That's correct. And that is, I'm sorry. LORENA IRWIN No. Well, let me just ask the second part of it and then have you comment. But on the other hand, the expert that your client retained, who critiqued Mr. Coffey, had a number of discrepancies in his calculations, such as, you know, where $90,000 came from. So if you could comment on the reliability of either of the experts, given these factors that I mentioned, and then what the trial court did with that. Okay. So I'm sorry, that's my call failed. It kicked me off. I'm back. Okay. Thank you. So with reference to the reliability of Mr. Miller's expert, the issue of his calculations are, you know, not in question, let's say, as opposed to Lorena's expert. But, you know, with reference to his calculations, those are not in question. But the problem is that the computer program that he relied on, the MoneyGuide Pro, the limitation of that program is stated in the materials, and it was acknowledged by Mr. Coffey during his testimony. And that limitation is that the program, the results generated by the program are meant to be reviewed regularly, because the program is a financial planning tool. And of course, finances can change more or less on a dime, let's say. So the problem with Mr. Miller's program he used are not inherent with his methodology. It is with the way it was used in this trial to predict a result 20 plus years into the future, which is the expected life, the life expectancy of Lorena is somewhat more than 20 years at the time these opinions were given. So Mr. Coffey is, the trial court is using Mr. Coffey's testimony to predict a result 20 years in the future, when the results of the program are supposed to be reviewed and adopted at intervals much shorter than 20 years. So that has to do with Mr. Coffey's testimony and the use of the MoneyGuide Pro software results. Regarding Mr. Christensen, you know, there are some problems with his testimony. And I would read the trial court resolution of the problems with his testimony as to find his projection of how long Lorena's assets would last. So that I think it can be concluded that the trial court conclusion was that his projections were not credible. So his projections were not credible, we could accept that finding. But that does not invest Mr. Coffey's conclusions with any greater credibility, because they really only have credibility for some short term. That MoneyGuide Pro simply cannot be used to predict something 20 plus years in the future. But the one very important matter on which both of these experts agree is that the result that either of them might project would be totally thrown off by a so called anomaly in the market. And Lorena's expert described anomalies in the market as having occurred really fairly frequently in recent history. And they include the dot com bubble of the early 2000s and the recession of 2008 to 2009. I suppose as we sit here today, we might speculate on whether or not the current pandemic effect on the markets would be another anomaly. And what these two also actually are 131 of the record. But anyway, these two experts definitely agree that if an anomaly or a bubble or a shock to the market occurs, that anything either of them have to say is that it really has to do with whether or not there was a justification for converting the award of maintenance from an indefinite award to a reviewable award, because it forces on Lorena to come running. I mean, no matter how much maintenance she is getting or not getting, as long as she has a right to maintenance, it forces her to keep bearing the burden to come in for a review of maintenance as her financial circumstances change, which is to say, if she were to have reanalyzed, let's say, Coffey's report. So that is a rather lengthy description, I think, of the questions of reliability of the experts in this case. Okay. Thank you. All right. I don't have any other questions. Justice Jorgensen, Justice Shostak, anything further before we turn to Mr. Doyen? No, thank you. Okay. All right. Mr. Doyen, would you like to begin, please? Thank you, Justices. I want to start with trying to articulate what we're really addressing here today, because Petitioner's argument suggests that Mr. Miller's petition should have been denied, but that can't be the end of the discussion because as a practical matter, the order that we were seeking to modify or terminate is the amended order on post-trial motions that was entered on January 8, 2008. It's in the record at C212 and in the appendix at page 41. That's page 3 of the order. Clearly identifies that Mr. Miller's maintenance obligation is tied to his income from employment and specifically excludes any income from return on investment, asset investments, or any passive income or any assets that were awarded to him as pursuant to the judgment. It specifically limits the maintenance obligation to earnings from employment, salary, bonuses, grants, and options granted after the date of dissolution of marriage. So upon his termination from employment with no employment income after his severance pay, under Judge Spence's, the original trial court judge's order, the maintenance is reduced to zero. So this issue of whether Mr. Miller met his burden of proof to show a substantial change in circumstances, it's not just looking at the fact that his employment was terminated, it's looking at the order that we're seeking to modify that defines his maintenance obligation solely based on earnings from employment. So if his earnings from employment are zero, we have to address the order. So the substantial change in circumstances is under the existing order, his maintenance was reduced to zero. So we brought it to the court's attention, but really, Lorraine Miller should have brought this to the court's attention because he could have just not filed anything and quit paying. But I mean, it was important to get it before the court because obviously that wouldn't have necessarily been the end of the discussion either, but somebody had to file the petition based on the loss of employment. So when we talk about the burden of proof, I believe petitioner, and partly based on one sentence in the Bernay decision, which I'll get to in a second, I believe the petitioner conflates the burden of proof to the court's obligation to consider all of the relevant factors under section 510 and 504. We've suggested in our brief, and I think the case law supports this, that it's really a two-step process. First, you identify whether there's been a substantial change in circumstances. If there has not been a substantial change in circumstances, that's the end of the case, the petition is denied. The issue in this case is whether or not Mr. Miller's loss of employment, which they've in good faith, constituted a substantial change in circumstances. And when you look at the circumstances of these parties, you have Mr. Miller, who the court found had net worth, the state valued at $2.4 million, and Lorena Miller, who had an estate worth about $1.4 million, neither of whom had any income from employment. The loss of income, the evidence was clear that approximately $500,000 in income over the course since the judgment was entered, and some years had more, some years had less, probably the overall average was over $500,000, but for purposes of maintenance, that was the limit on the maintenance. But to suggest that someone who has $2.4 million net worth and loses an income stream of $500,000 a year, to suggest that that's not a substantial change in circumstances, I think is ridiculous. The fact is, on its face, that loss of employment income was a substantial change in circumstances. So then we then move to the second step, which is to consider all of the factors under 510 and 504. In considering those factors, Mr. Miller does not have a burden to prove the existence or non-existence of any of these factors. That's for the court to consider all of the evidence presented by both of the parties, and in considering those factors, make a determination as to whether or not maintenance should be modified, whether or not maintenance should be terminated. If not terminated but modified, what is the appropriate amount of maintenance? There's not a burden of proof, as Ms. Perkles said in her argument, that Jeffrey Phelan is burden of proof on ability to pay. Ability to pay is a factor for the court to consider. It is not an element of Mr. Miller's burden of proving a substantial change in circumstances. Now, what Bernays case says, and some other cases have talked about, is these issues can become part of the consideration if the loss of income from employment by itself does not establish a significant difference in the income of the payor. In other words, in Bernays, we're talking about somebody that had a net worth that was going to be in excess of $5 million and still owned the business that he used to work for and would still be earning income from the business even though he wasn't being paid his salary. So the part of the puzzle that was his loss of employment earnings was by itself not significant enough to establish a change in circumstances. That's completely different than the facts we have in this case. The other case, Verhines, I think it's important to note, and the Verhines case acknowledged that, even though considering substantial change in circumstances in the context of maintenance and child support, the cases on each issue can be instructive, there is a significant difference in considering a payor's obligation to pay child support as compared to their obligation to pay child support. The Verhines court states that this is in the Verhines decision at paragraph 86. This commonality between child support and maintenance renders maintenance cases instructive. In discussing maintenance cases, comma, we are mindful that the duty to support one's minor child is more absolute than the obligation to continue maintenance. And in this context, if there's a judgment entered that sets a child support obligation, you know you have a minor child and you know at what age that minor child is going to be emancipated or at least expect the minor child to be emancipated, and you have to make decisions regarding your employment or search for employment or continued employment or retirement in the context of the absolute obligation to support the child. In the context of maintenance, it's really a different analysis, although there's some, they can be instructive, which is what the Verhines court said, but not controlling because in a maintenance situation, we use the words permanent and rehabilitative over the years, even though those were never really defined ever in the statute, and now we've had significant modifications to the statute, and we have lots of case law dissecting this issue of what permanent means or what rehabilitative means or what modification means or what review means. But the court in Henry the Marriage of Wojcik, which we cite in our brief, made the point that in the context of these cases, permanent does not mean everlasting. So as a practical matter, we know at some age, people are going to get to an age where they're going to retire, whether it's at 63, 67, 70, you know, it depends, each case is different. But the analysis of whether or not it's a permanent maintenance case, the analysis is different, and you at least have to grant the petition to modify and then apply the factors in determining what maintenance should be going forward. The one sentence in Verhines that I take exception with, not the decision in general, but the reliance by petitioner on this idea that there's a burden to prove and inability to pay, the quote from Verhines. Now keeping in mind in the context of that case, maintenance, the issue was termination of maintenance, so you can't ever come back and have it modified or reviewed again. The comment of the court was, Jerry was required to show that a substantial change in or that Jerry was no longer able to pay Lynn's maintenance. That was at paragraph 18 of the decision. In the context of the entire decision and everything the court considered and considering all the other case law, I would suggest that that phrase, or that Jerry was no longer able to pay Lynn's maintenance, actually misstates the petitioner's burden of proof. There isn't a burden of proof to show a substantial change in circumstances. Once that's proven, then the court has to consider all the factors. In Bernay, in considering even if you found there was a change in circumstances, it's clear from considering all the factors that maintenance still was appropriate because of the substantial wealth of Jerry, the payor, compared to the relative lack of wealth of the recipient. In this case, the facts before the trial court are that you have two people of the same age. Neither is working. They're both unemployed. Jeffrey Miller's net worth is about $2.4 million as found by the trial court, and Lorena Miller's is $1.4 million. As I pointed out in our brief, that didn't even include the $71,200 payment that Jeffrey had to make to Lorena for the true-up for 2018. There was not that gap in their net worth. The next thing with the court considering all the factors, the court has to consider what efforts Lorena made just to contribute to her own support. Not that she could be self-supporting, but what efforts did she make to contribute to her support? It's a factor the court has to consider, so the fact that we introduced expert testimony to help the court consider that factor makes it relevant. If she had just earned minimal income, she could have substantially increased the likelihood of all these variables under this money program that she would have been more than likely and almost guaranteed to succeed in living the same lifestyle. The probability of her achieving that is less without the imputed income, but you can't ignore that factor, so the expert testimony weighed in on that factor. The other point is with regards to the last order on a modification petition was the 2013 petition which the trial court denied. I think petitioners putting words into Judge Cruz's mouth. The fact of the matter is if you look at Judge Spence's original decision, he specifically commented on the fact that Lorena Miller was pursuing an undergraduate degree and he set maintenance at 41.44% of gross income for the first four years, but then stepped it down to 21.44% after the first four years, specifically an acknowledgment of the fact that that gave Lorena Miller the opportunity to complete her undergraduate degree and join the workforce, so it's not surprising that Judge Cruz on the petition for modification said, well, the modification was built into the original order. It contemplated that she would earn income from employment and still need 21.44% of gross income for maintenance. The fact that she chose not to work is on her, and she's going to have to suffer the consequences of that in the long run, but as of 2013, the fact that she hadn't worked, that Mr. Miller had already gotten the benefit of a 20% reduction in maintenance after the first four years, so the imputed income was basically built into Judge Spence's original decision, even though he didn't identify an income level for Lorena Miller. The fact is, if we say that Jeffrey Miller's income averaged $500,000 a year by reducing the maintenance from 41.44% to 21.44%, that's $100,000 a year in maintenance that Lorena Miller was never receiving after the first four years, with the idea that that loss of maintenance would have been made up by some income from employment on her part based on her obtaining her undergraduate degree. So there was an imputation of income, although not identified by a dollar amount, that was included in Judge Spence's original judgment. So just to focus a little bit on what Judge Cruz did, the changing the nature of maintenance. I think what Judge Cruz did is exactly what some of these more recent decisions have suggested, and that is, if you know something's going to happen in the not too distant future, and you're setting maintenance, let's help everybody by identifying what the trial court believes in the future would be something that might trigger a future modification. He wasn't changing the nature of maintenance, he was doing what the appellate courts have asked trial courts to do, and that is he identified Lorena Miller's eligibility for Medicare as being something in the future that might be a basis to modify the maintenance because she'll no longer have the premium for private health insurance, which the court I think found was $1,300 a month. So basically he was just explaining how he arrived at the $1,300 per month and saying, you know, in the party could file a petition to modify when Lorena Miller becomes eligible for Medicare, but that doesn't mean that a petition would be granted, and it doesn't mean that either party has to file a petition. The maintenance is set at $1,300 a month, and it's going to continue forever unless and until somebody files a petition to modify, and a trial court at that time, hearing the evidence, decides to modify it. So there wasn't any built-in automatic termination or modification tied to Lorena Miller's eligibility for Medicare. It was just the court, the trial court, pointing out this is something the trial court took into consideration. It's a future, and we got the language in some of these cases now saying if something's foreseeable, it can't be a substantial change in circumstances unless it was identified as a potential substantial change in circumstances at the time the order was entered. So I think Judge Cruz... Now, counsel, excuse me, the buzzer went off, so if you want to just send us your thoughts, I know it's hard to hear sometimes, but just finish, go ahead, finish your sentence or two. No, I was just saying I do not believe the trial court changed the nature of maintenance by pointing out a future event that might be a basis for modification. The other thing I was going to say is these anomalies and the experts, both their opinions about different things that can happen in the future that we can't know, but those things could be the basis for a petition to modify. So it's not, we don't have to wait 20 years to review this. Anybody can file a petition to modify. Just Mr. Miller, maybe his loss could lose more than Mrs. Miller, who knows what the impact is going to be going forward, but either party can file a petition to modify if there's a substantial change in circumstances. Thank you. Thank you, counsel. Justice Jorgenson, questions? Yes, my primary question is to clarify your point. Your position is that a petition to modify change maintenance, the movement must show a substantial change in circumstance, but your position in defining that is that the change in circumstances is unrelated to either ability to pay or need. Is that correct? Not unrelated. Well, is it part of it or is it not part of it? If the loss of employment does not impact in any way the ability to pay, then there's no substantial change. What Petitioner had suggested is that Mr. Miller had the burden to prove an inability to pay. His burden to prove was to show a change, a substantial change in his ability to pay. Okay, then here's my position or my question. If you show a loss of income, but it does not impact your ability to pay, have you met your burden? If it doesn't impact at all your ability to pay, then I'd say we did not meet our burden, but that's why I tried to distinguish the Bernay case. If you have $5 million in net worth, you still own the business, you're still going to get business income even though you're not drawing a salary. Where has there really been any difference? Does it have to be income from a business or employment or can it be income from any source? Well, it's depending on the net worth of the individual. It could just be as wealth being the source. But I do think we do have another distinction in this case is the underlying order only orders payment and maintenance on income from employment. So the net effect of him losing his employment reduced maintenance to zero, which I don't think that's what Petitioner is asking for. Well, the order that he procured, in effect, when she becomes eligible for Medicare would be zero, correct? Well, I know that's what Petitioner suggested. I think the only thing the trial court did was suggest that that could be the basis for a modification, but he didn't rule in advance that it would terminate when she becomes eligible for Medicare. It would have to be the filing of the medical petition. But you have to concede that it was pretty close to concluding that, wasn't it? Well, I think the trial court looked at that as an expense that Mr. Miller doesn't have, that she does. And that was the basis of the maintenance of $1,300 a month. Is it your position that your client can no longer meet his maintenance requirements? He no longer has the ability? Well, in a vacuum, I mean, he would substantially be prejudiced in his ability to meet his own living expenses in the lifestyle they enjoyed during the marriage if he had to continue to pay maintenance. And what he would be doing if he had to continue to pay maintenance would be make up for the fact that Lorena Miller never rejoined the workforce. If she had rejoined the workforce, the gap between their net worth would be substantially smaller. Again, Petitioner hasn't suggested an appropriate amount of maintenance, but if we apply the guidelines, which on a petition to modify, I've already argued if we deny this petition, then the maintenance is zero, which nobody is asking for that result. So we are modifying the maintenance. We have to apply the guidelines, which would be capped at 40% of the combined net incomes. So I don't know that maintenance would be, I think maintenance would be less than $1,300 if we applied the guidelines. And you're considering that that would be income from employment only, right? No, if we modify the existing order, so we're going to consider each party's income from investments. And I think both experts excluded their primary residences, took their investment in invested assets, and each expert did a different analysis. But I mean, whatever is good for the goose is good for the gander. So if we say Lorena Miller's net worth after subtracting out her real estate is this, and Jeffrey Miller's net worth after subtracting out his primary residence is this, and we apply the exact same level of income to their invested assets, and then we determine 40% of the total income, I suggest to the court that the maintenance would be less than $1,300 a month. Okay. I have no other questions. Thanks. Okay, Justice Gossett. Yes, I do have a question. You're, you're indicating this is, is it Doyin? If you're indicating that all the court has to find is that there's a substantial change in circumstances, but then you say then you have to ask, he still meet his obligation. Did the court get to the second prong in this case? Well, yes, I think the court properly considered all of the factors under 510 and 504, which includes ability to pay maintenance, the efforts that have made by the recipient to contribute to her own support, the employability of each party, the assets each party has, and in determining the relative ability of each party to maintain the lifestyle enjoyed during the marriage, I think the court correctly found that except for the fact that Lorena Miller has this $1,300 health insurance premium, she's otherwise able to support herself from the assets she has, and that to order Mr. Miller to continue to pay maintenance beyond this $1,300 a month would jeopardize his ability to maintain the lifestyle. Now, there is a part of this, which I don't, you know, you can't ignore the fact because the statute requires to take into consideration the recipient spouse's efforts to contribute to her own support. So the, I think the trial court concluded to the extent there's a difference in Jeffrey Miller's ability to live in a lifestyle enjoyed during the marriage compared to Lorena Miller's, it's primarily a result of her refusal to make any effort to earn income since the judgment was entered. Did the court have taken into consideration his new wife's finances? Well, only to the extent that she would be contributing to what would normally be joint expenses, like payment of the mortgage, utilities, things like that. I don't think the court can take into account her, the current spouse's net worth, but in determining what Jeffrey's monthly living expenses are, and I think he was cross-examined at length on that, and some of the expenses that his current wife is paying were not even listed on his affidavit to begin with because he anticipated those questions, but he was also cross-examined on whether any of the expenses listed on the affidavit his current wife was contributing to. And I believe the testimony was also that his current wife does not have any income from employment either. If we found that the court did not make specific findings referring to Jeffrey's ability to pay maintenance, would your position be that we should remand it for the court to make those findings? My reading of the case law and the reading of the trial court's decision, I think the trial court clearly made reference to the factors and that he had considered all of the factors. I don't know what the utility would be of remanding it for additional findings. I mean, as a practical matter, where are we going with it? He has two, but based on the court's findings, which I think he didn't even consider the $71,200, but he made a finding that Jeff Miller has net worth of $2.4 million. Lorena Miller has net worth of $1.4 million. And Lorena Miller never has worked, and Jeff Miller continued to work and pay substantial maintenance up till through 2018. On those facts and considering all the factors, there's no basis for an ongoing maintenance award except for her ability to pay this health insurance premium. Was there any finding that Jeff continuing to pay the existing maintenance would unduly compromise his ability to meet his own needs? Was there any finding about that? I don't think the trial court made a specific finding of that. I mean, I think he made a finding that continuing to pay $107,000 a year would have, but he has between $107,000 a year and the $15,600 a year. I don't know that the court made that finding. Thank you. I have no further questions. This is Justice Enoff. I just have one follow-up question. While the trial court made a finding regarding Jeffrey's net worth, was there really any testimony or evidence other than his financial affidavit as opposed to all of the expert testimony regarding Lorena's financial circumstances? Was there any evidence introduced other than the financial affidavit regarding Jeffrey's net worth? Well, he testified, you know, like, for example, that his stock account was still tied up and he had to wait a few more months before he could move that, and he wasn't sure what the, he didn't like having that much tied up in the stock, and he talked about how much he was planning on pulling out of after-tax accounts versus deferred-tax accounts. So, it was his testimony rather than any experts regarding that. But the testimony of both experts could just as easily be, it's just a rate of return on as it does to Lorena. So, you could say, well, they criticized Jeffrey's expert. You could apply Mr. Coffey's same analysis to Jeffrey's net worth and get a higher probability because he has a higher net worth, but you could apply the exact same analysis. And the same thing with Mr. Christensen. If you applied his analysis to Mr. Miller's, he'd run out of money in 10 years, right? So, he'd never make it on Mr. Christensen's analysis. So, this idea that somehow Lorena has to be guaranteed this lifestyle for the rest of her life without any chance of her failing, but then when we say, well, Mr. Miller can pay for it, why wouldn't the same analysis be true for him? You could take Mr. Christensen's carve out $200,000 to set aside in case something really bad happens, set off another $200,000, I forget what the rationale was even, and then we're left with this amount and you invested at 3%, what would Mr. Miller's annual income be? It would be practically nothing. Okay. Thank you. All right. Thank you very much, Mr. Doyon. At this time, Ms. Pirco, we'll hear you for your five-minute rebuttal. Well, the issue on the burden of proof seems to be the core in this case when you consider the recent precedent. And the case law clearly identifies a change in circumstances to mean an inability to pay the support order or on the other hand, the recipient spouse's lack of need. So, we maintain our position that the change in circumstances, as particularly now in the circumstances of this case, when we're looking at a retiree, that there has to be some showing of an inability to pay. In the common situation of a much younger obligor, ordinarily, you are looking at a support obligation that is based on actual income earned either from employment, which is the most frequent, or from a business ownership. And in the situation where the employment is lost, or for whatever reason, the business is lost, obviously, there's zero income. And there is an impact on the ability to pay. When, however, the expectation because of retirement is that we will be looking at other assets, meaning accumulated assets, regarding the ability to pay, that is necessarily a part of the movement's burden. Because the movement's burden is to show a change in circumstances. And retirement simply in and of itself does not mean a change in circumstances that affects the ability to pay. And we maintain that this record simply does not reflect realistically what Mr. Miller's ability to pay is. I want to discuss this concept of the affilee, that the interpretation of the existing judgment order for maintenance is that Mr. Miller's obligation has been converted to zero maintenance. And the case law, and specifically there's language in Brene that talks about the importance and significance of a grant of indefinite or permanent maintenance. So, we would submit that it is absolutely unreasonable to look at the judgment award in this case, which was to grant 21.44% of Mr. Miller's gross income as maintenance to income from employment, now meant that Lorena was entitled to no maintenance. That actually, however, is the position on which the affilee tried this case in the trial court. But we would submit that that is an unreasonable interpretation of the existing judgment, and a reasonable-I mean, they haven't really suggested what a reasonable interpretation would be, but we would suggest, for instance, that the draws that Mr. Miller is taking from his assets would be a reasonable measure. And my time is- Well, if you-yeah, the time is gone, but if you want to just finish your sentence. Well, so, he, for instance, on his financial affidavit actually indicates the sum of $3,000 as a maintenance obligation as one of his expenses. Interestingly, also, that $3,000 figure is roughly the figure of the 21.44% of maintenance that was- Thank you. On his base salary. So- Thank you. For all the reasons, we're asking that this matter be reversed. Okay. Justice Jorgensen, any questions? No, no questions. Justice Shastek? None, thank you. Okay. And I don't have any further questions. So, at this time, we would certainly like to thank counsel for your arguments this morning, for your participation in this oral argument. The court will take the matter under advisement and render a decision in due course. Court will stand adjourned as to this matter. We do have other oral arguments this morning, and we will be continuing to hear those as the morning progresses. So, thank you very much, everyone. You may now all hang up. Thank you. Thank you, Your Honor. Thank you. Okay. Thank you all. Bye-bye.